Umana, J.
This is an action for goods sold and delivered in which the plaintiff seeks to recover for such goods in the amount of $384.15. The defendant filed an answer and counterclaim. The court found for the plaintiff on its complaint in the sum of $384.15, and the court found for the defendant on its counterclaim in the sum of $7,621.00.
At the trial, there was evidence that sometime in 1976 the defendant, Francis X. Reilly, contracted with the plaintiff for the procurement of certain aluminum extrusions which were to become handrails on a project in Rhode Island. Reilly informed Eastern that he was a sub-contractor on the job and that he was subject to $500 per day delay charges. These extrusions were to be installed as side and center-lighted handrails.
Delivery of these special extrusions was made in November, 1976. When they were received, Reilly noted that they were deeply gouged, pitted, scratched and damaged on their ends. Reilly immediately telephoned Gerry Gorham at Eastern Metals informing him that the extrusions were defective and inquiring about a shipment of replacements. Gorham offered a new shipment but told Reilly it could not be made for eighteen weeks. Reilly explained that he was already behind schedule and that he could not wait eighteen weeks. Gorham and Reilly discussed the matter and it was agreed that Reilly should attempt to remedy the shipment by cutting out the worst sections and by sanding and grinding the remainder of the extrusions so that they would be put in useable condition.
Reilly and his employees expended a great deal of shop and on-site time in performing this work. In all, Reilly compiled additional costs for labor, anodizing, trucking and other costs, the total of which exceeded $15,000.00.
The plaintiff claims to be aggrieved by the trial judge’s rulings on the following requests:
2. That a finding for the defendant is not warranted.
COURT: Denied. A finding for the defendant on the plaintiffs complaint is warranted, but I do not so find. There was evidence that the defendant rejected the aluminum extrusions at issue, however I find that he accepted the goods as non-conforming and that he worked on the extrusions, cutting, grinding and sanding them until they were sufficiently smooth to use.
5. That the defendant having accepted and used the merchandise in *228 question, is not estopped from objecting to the quality of the merchandise. M.G.L. c. 106, § 2-605.
COURT: Denied as an incorrect statement of M.G.L. c. 106, § 2-605. When the defendant, Reilly, inspected the extrusions he saw that they were pitted, gouged, and too rough for use as hand railings. Immediately he called Gerry Gorham at Eastern Metal and informed him that the goods were not acceptable and clearly informed Gorham as to the defects. He told Gorham that he wanted another shipment, but because the items could not be supplied to the defendant for at least 13-18 weeks, and because the defendant would therefore be in breach of his contract with the general contractor, and subject to severe delay penalties, Gorham instructed him to attempt to smooth down the items, cutting out the worst parts. His conversation with Gorham constituted notice of breach pursuant to M.G.L. c. 106, § 2-607.
6. That the defendant has accepted goods from the plaintiff because:
(a) After a reasonable opportunity to inspect the goods the defendant has signified to the plaintiff that the goods were conforming or that he would take or retain them in spite of their non-conformity; and
(b) The defendant had failed to make an effective rejection, in accord with subjection (1) of M.G.L. c. 106, § 2-605; and
(c) The defendant has done acts inconsistent with the seller’s ownership, for example, inter alia, use of goods in violation of M.G.L. c. 106, § 2-605.
COURT: Granted that the defendant accepted the goods but he did notify the plaintiff of the breach pursuant to M.G.L. c. 106, §2-607 (3)(a).
8. That, a finding for the defendant (plaintiff-in-counterclaim) is not warranted.
COURT: Denied, a finding for Reilly is warranted. Furthermore, I find for Reilly in the amount of $7,621 on the counterclaim due to the Eastern Metal’s breach of warranty by delivery of the defective aluminum extrusions.
15. That the defendant is not allowed to bring a compulsory counterclaim at any time other than at the time of filing his answer. The defendant did not bring the compulsory counterclaim until well after he had filed his answer and therefore, the counterclaim is void pursuant to Dist./Mun. Cts. R. Civ. P., Rule 13(a). Potier v. A.W. Perry, Inc., 286 Mass. 602 (1934).
COURT: Denied as an incorrect statement of Dist./Mun. Cts. R. Civ. P., Rule 13(a), and as not applicable. Assuming that the counterclaim in this case is compulsory in that it arises out of the same transaction and because it satisfies the other recognized tests, the counterclaim has been brought by the defendant in pleading to the complaint. Furthermore, there was no motion to strike or dismiss the counterclaim nor was there objection at trial to the introduction of evidence on the counterclaim. Any objection to the counterclaim is therefore deemed waived.
16. That the defendant, at the time of moving to amend his answer by ordering the counterclaim, had not suffered any damages. The defendant states, under oath, in the affidavits attached hereto, that the damages were not determined at the time of filing the counterclaim. Therefore, the counterclaim is null and void pursuant to Dist./Mun. *229 Cts. R. Civ. P., Rule 13 and as not applicable since any objection to the counterclaim has been deemed waived. (See ruling on Request #15).
The court also made the following findings of fact:
The defendant is alighting contractor and has been in the business of supplying lighting, ceilings, fixtures and components thereof for thirty years. In early 1976, the defendant became a sub-contractor/supplier on a construction job in Rhode Island. He was to supply handrail lighting, the installation of which was to commence in October, 1976. He contacted the plaintiff and provided drawings of a particular aluminum extrusion which was to become the handrails. Eastern Metals sent back an alternative drawing, which Reilly approved and adopted. He informed Eastern Metal that he needed the handrails the second week in October and the plaintiff agreed that it could make the October delivery date. Eastern stated that it did not have the items on the shelf, so a special die would have to be made for the job. Reilly informed Eastern that he was subject to $500/day delay charges by the general contractor.
The extrusions at issue were delivered approximately two weeks late, in November, 1976. When Reilly received the items he opened the boxes and found that the handrails were unsatisfactory, because their surfaces were too rough in that they were gouged, pitted and marred by slits and scrapes. He called Gerry Gorham at Eastern Metal and inquired about a new shipment of non-defective extrusions. Gorham informed him it would take thirteen to eighteen weeks for delivery of new handrails. Reilly stated that the time frame was not acceptable because he was already behind schedule. Gorham instructed Reilly to attempt to smooth down the rails and to cut out and discard the worst sections.
Reilly worked on the items at his shop with a sander and grinder and did additional work on the extrusions at the job site in Rhode Island. This additional work which was required to put the extrusions in a useable condition meant a higher labor cost than anticipated by Reilly. In fact, Reilly’s additional labor alone, both at his shop and at the site, ran close to $4,000. Reilly was forced to expend additional amounts improving the condition of the extrusions. His total damages were $7,621.
I find that the delivery of non-conforming and, in fact, defective goods, constituted a breach of warranty by Eastern Metal.
I further find on the counterclaim that Reilly is entitled to damages in the amount of $7,621 which constituted the ‘cost to cure’ the defective goods. The ‘cost to cure’ method was in fact agreed upon by Eastern Metal when Reilly was instructed to so proceed by Gerry Gorham.
The plaintiff s requests for rulings present essentially two issues: revocation of acceptance by the buyer of goods delivered to him by the seller when those goods are non-conforming and the appropriateness of a counterclaim by the buyer against the seller’s claim if there is a proper revocation of acceptance by the buyer.
Revocation of acceptance is a refusal on the buyer’s part to keep the goods, but a refusal which comes at a later time in the transaction and after the buyer has “accepted” by some act with respect to the goods. M.G.L. c. 106, § 2-608. The buyer may revoke his acceptance of a lot whose non-conformity substantially impairs its value to him if he has accepted it and if the revocation of acceptance *230 occurred within a reasonable time after the buyer discovers it and notifies the seller. A buyer who so revokes has the same rights as if he rejected them. Id.
All of the above elements are present in this case: there was substantial impairment of the value of the goods to the buyer; revocation of acceptance was exercised in a reasonable time after they buyer discovered the defects; notice was given to the seller. In addition, the buyer notified the seller that he was a sub-contractor on ajob and subject to $500 per day delay charges to the general contractor. When the defendant buyer notified the plaintiff seller of the defects in the extrusions, the latter instructed the defendant buyer to cure them himself. Under those circumstances, the trial justice was warranted in finding that the delivery of goods by the seller was non-conforming, that there was a proper revocation of acceptance by the buyer and that the delivery of the defective goods constituted a breach of warranty.
Unless there is an explicit contract term so providing, revocation of acceptance does not foreclose the buyer’s suit for breach of warranty. M.G.L. c. 106, §2-608 and § 2-714. Any incidental and consequential damages resulting from the seller’s breach may be recovered. Chapter 106, § 2-715(2)(a).
The second issue deals with the question of whether the defendant filed his counterclaim properly. A compulsory counterclaim must be stated in the defendant’s pleadings. Mass. R. Civ. P. and Dist./Mun. Cts. R. Civ. P. Rule 13(a). A counterclaim is a compulsory one if it arises out of the transaction or occurrence that is the subject matter of the plaintiff s claim. 9 Mass. Practice § 322 (Nolan).
If the defendant’s claim is subject to compulsory counterclaim he must plead the counterclaim or be barred. However, if failure to plead the compulsory counterclaim is due to oversight or when justice requires it, he may set up the counterclaim by leave of court. Mass. R. Civ. P., Rule 13(f) and 9 Mass. Practice § 322 (Nolan).
In the present case, the trial justice allowed the defendant’s compulsory counterclaim, despite the plaintiffs request for a ruling that defendant had not properly filed it, on various grounds. First, the trial justice found that the compulsory counterclaim was pleaded. See Exhibit “B”, Second, even if the counterclaim had not been filed timely, no motion to strike the counterclaim had been filed by the plaintiff; and third, no objection was made at the trial to the introduction of evidence on the counterclaim.
This court now proceeds to deal with the plaintiff s specific requests for rulings. The requests which were granted will not be considered since the plaintiff was not aggrieved by their allowance. The following requests were specifically or essentially denied: 2, 5, 8, 15 and 16.
Request number 2 asserts that a finding for the defendant is not warranted. The trial justice, in effect, separated the plaintiffs claim and defendant’s counterclaim. He allowed the request insofar as the plaintiffs claim is concerned, but denied the request insofar as the defendant’s counterclaim is concerned.
As to defendant’s counterclaim, the trial justice found there was a proper rejection of the aluminum extrusions and that the defendant accepted the goods as non-conforming and worked on them until they were sufficiently smooth. That answer plus the findings of fact as to notice to the plaintiff, and the plaintiff s response to the defendant for the latter to work on them, and the breach of warranty, as well as the revocation of acceptance, is sufficient response to warrant the trial justice to find for the defendant in its counterclaim.
As to the plaintiffs request number 5, the trial justice was correct in denying it. It is an incorrect statement of M.G.L. c. 106, § 2-605 as it applies to this case where the defendant gave prompt notice to the plaintiff upon finding the defects. *231 That section rests upon the policy of permitting the buyer to give quick and informal notice to the seller. (See Uniform Laws Comment on c. 106, § 2-605).
Defendant’s request number 6 presents the same issues as request number 5 and the trial justice was warranted in finding that the goods were nonconforming, that the defendant made an effective rejection in accord with the same section of the law, and that the defendant gave proper notice to plaintiff of the breach of warranty.
Defendant’s request number 8 was properly denied because the findings of fact support the trial justice’s denial in that there was proper revocation of acceptance and proper notice to the plaintiff.
The plaintiff’s request number 15 which was denied raises the procedural question whether the defendant properly pleaded his counterclaim. The trial justice properly denied that request because he found that it was pleaded; also there was no motion to strike or dismiss the defendant’s counterclaim; finally there was no objection to the introduction of the evidence on it at trial.
The final request denied was number 16. The trial justice denied that request for the same reasons given in his denial of request number 15. Any objection to the counterclaim had been deemed waived by the plaintiff, as well.
The Report is hereby dismissed.